# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARINE POGOSYAN,<br><br>      Petitioner,<br><br>      v.<br><br>PAMELA BONDI, et al.,<br><br>      Respondents. | Case No. 1:26-cv-02219-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a noncitizen who first arrived in the United States as a parolee on or about August 5, 1992. On or about March 30, 1994, she was granted permanent residency in the United States. In 2007, Petitioner was convicted of grand theft and sentenced to a sixteen-month imprisonment term. (ECF No. 1-1.) On August 26, 2008, Petitioner was ordered removed to Armenia due to the theft conviction. (ECF No. 1-2.) Petitioner remained detained until December 3, 2008, when she was released from custody and placed on an order of supervision ("OSUP"). (ECF No. 1 at 2[1]; ECF Nos. 1-3, 1-4.)

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

In 2011, U.S. Immigration and Customs Enforcement ("ICE") officials directed Petitioner to file an application for travel documents with the Armenian embassy. (ECF No. 1-5 at 2.) Petitioner complied, and on April 15, 2011, the Consulate General of the Republic of Armenia denied Petitioner's "application for 'Certificate of Return to the Republic of Armenia'" because the "provided information was insufficient for the approval of her Armenian citizenship." (Id.; ECF No. 1-6 at 1.)

On multiple occasions, Petitioner was convicted of an offense, arrested by Enforcement and Removal Operations ("ERO") Los Angeles, and then released on OSUP. (ECF No. 6-2 at 3–4.) On October 3, 2025, Petitioner was re-detained at an ICE check-in. (ECF No. 1-5 at 2.) She was first transferred to the Adelanto Detention Facility on October 5, 2025, and later transferred to the California City Detention Center on November 24, 2025. (Id. at 3.)

On October 6, 2025, the Department of Homeland Security ("DHS") emailed the Consulate General of Armenia about Petitioner. (ECF No. 1 at 3; ECF No. 6-2 at 4.) Also in October 2025, Respondents allege they attempted to conduct travel interviews with Petitioner but that she refused to sign or fill out an application for a travel document. (ECF No. 6-2 at 4–5.) Petitioner, however, contends that she was presented with a document (a single sheet of paper) that contained Armenian, which she does not know how to read, and she also stated that she did not want to sign any documentation without first obtaining her attorney's advice. (ECF No. 1-5 at 3.) On October 21, 2025, DHS mailed a travel document request packet to the Consulate General of Armenia in Glendale, California. (ECF No. 6-2 at 5.)

On October 29, 2025, Petitioner's attorney received a seven-page document from ICE. Several pages are in Armenian and the pages that contain English include the words "Application for Armenian Citizenship Recognition" and "Application Questionnaire for Obtaining Return Certificate of the Republic of Armenia." (ECF Nos. 1-8, 1-9.) On November 12, 2025, ICE served Petitioner with a Form I-229(a) warning her about the failure to depart the United States and requiring her to provide ICE with identity documents. (ECF No. 1-5 at 3; ECF No. 6-2 at 5.)

While still detained at Adelanto, Petitioner filed a petition for habeas corpus and motion for temporary restraining order ("TRO") with the United States District Court for the Central

2

District of California on November 19, 2025. Petitioner argued that her OSUP was improperly revoked in violation of the regulations because she had not received proper notice or an informal interview. The district court partially granted the motion for TRO by ordering ICE to conduct an informal interview with Petitioner and for the interviewing officer to file a declaration. An interview was conducted on December 9, 2025 and a declaration by an interviewing officer was eventually filed. The district court denied the motion for TRO as moot on February 23, 2026, and issued an order to show cause why the habeas petition should not be dismissed. Petitioner voluntarily dismissed this habeas petition on March 20, 2026. (ECF No. 1 at 4–5.)

On March 20, 2026, Petitioner filed the instant petition for writ of habeas corpus and a motion for temporary restraining order ("TRO") in this Court. (ECF Nos. 1, 2.) The district judge denied the motion for TRO as untimely, and "refer[red] the matter to the assigned magistrate judge for a determination on the merits," and ordered Respondents not to "remove Petitioner from the United States nor transfer Petitioner out of this District." (ECF No. 4 (emphasis deleted).) On April 13, 2026, Respondents filed an answer, and Petitioner filed a reply on April 15, 2026. (ECF Nos. 6, 7.)

**II.**

**DISCUSSION**

In the petition, Petitioner asserts that her indefinite detention where removal is not reasonably foreseeable violates substantive due process and 8 U.S.C. § 1231. (ECF No. 1 at 15–21.) Respondents argue that because ICE "recently confirmed with the Armenia Consulate that Petitioner would be accepted into Armenia on a charter flight without the need of travel documents" and the "only obstacle to Petitioner's removal is the current order requiring Enforcement and Removal Operations ('ERO') to not transfer Petitioner out of the district or remove her from the United States," the Court should deny the petition as "Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) and there is a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 6 at 2.)

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory

3

scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to

4

rebut that showing." Zadvydas, 533 U.S. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Generally, courts have held that "the burden-shifting framework from *Zadvydas* does not apply" when the case concerns "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). In such situations, the "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply . . . and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163. Here, however, the petition does not assert that Respondents failed to follow the regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) in re-detaining Petitioner.[2] Rather, the petition challenges Petitioner's allegedly indefinite detention, asserting that removal is not reasonably foreseeable and arguing that her detention violates substantive due process and 8 U.S.C. § 1231. (ECF No. 1 at 15–21.) Accordingly, the Court finds that applying the Zadvydas framework is appropriate in this instance.

Respondents submitted a declaration of a deportation officer that states in pertinent part:

> In the absence of originals, DHS routinely submits a sworn identity packet to secure travel arrangements. Armenia has previously accepted such verification packets in lieu of originals. Accordingly, DHS has proceeded in that manner here. The absence of original civil documents may modestly lengthen the processing timeline if Armenian officials request additional corroboration, but it does not bar issuance of travel documents.

> ICE intends to removal Petitioner to Armenia. On October 21, 2025, ERO mailed a travel document request packet for Petitioner to the Consulate General of Armenia in Glendale, California, for consideration by Armenian authorities.

> ICE has now received notification from the Armenian Consulate that Petitioner will be accepted into Armenia on a charter flight without travel documents.

---

[2] The petition specifically states that it "raises issues that were not previously raised in her first petition." (ECF No. 1 at 5.) "In that [first] petition, Petitioner argued that her OSUP had been incorrectly revoked in violation of the regulations because she had not received proper notice or an informal interview." (Id. at 4.)

> The only thing preventing ERO from removing Petitioner to Armenia is the fact that there is a District Court order requiring that ERO not transfer Petitioner from the district or remove her from the United States.

(ECF No. 6-2 at 5 (paragraph numbers omitted).) Petitioner argues that "Officer Guzman's unsubstantiated statement that Armenia will accept Petitioner without travel documents does not demonstrate that Petitioner's removal is reasonably foreseeable, in light of the documentary evidence that Armenia has refused to accept her in the past." (ECF No. 7 at 3.)

"Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

> For example, in *Singh v. Gonzales*, the court found that ICE had not met its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government." 448 F. Supp. 2d at 1220. And in *Chun Yat Ma v. Asher*, the court considered an affidavit from an ICE official that included a statement that an individual's travel documents would "likely" be issued soon. 2012 WL 1432229, at *4. Yet, the court noted, a deportation officer could not give any "indication of when the issuance may occur." *Id.* As the court concluded, "[t]he conflicting statements concerning removal, together with the Government's failure to provide a current affidavit or any sort of reliable evidence that removal is likely weighs in favor of finding that Petitioner's removal is unlikely to happen in the reasonably foreseeable future." *Id.*

Nguyen, 796 F. Supp. 3d at 725. In Nguyen, the district court found the government did not meet its burden where a request for travel documents was sent to Vietnam but it was unclear "if Vietnam has acknowledged or otherwise responded to the request" or "how long Petitioner may have to wait for travel documents—if Vietnam even decides to provide them." Id. at 726.

The instant matter is readily distinguishable from the cases in which courts have refused to find Respondents' burden met. In those cases, the government submitted travel document requests but there was no indication when or if the travel documents would issue. In contrast, here, the deportation officer's declaration specifically states that "ICE has now received notification from the Armenian Consulate that Petitioner will be accepted into Armenia on a charter flight without travel documents." (ECF No. 6-2 at 5.) Although Respondents have not provided documentary evidence, such as correspondence from the consulate confirming they will accept Petitioner without travel documents, the deportation officer made his declaration "under

oath and subject to the penalty of perjury[.]" (ECF No. 6-2 at 1.) Accordingly, the Court recommends finding that Respondents have met their burden in rebutting the showing that there is no significant likelihood of removal in the reasonably foreseeable future.

**III.**

**RECOMMENDATIONS**

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus (ECF No. 1) be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 5, 2026**

STANLEY A. BOONE
United States Magistrate Judge

7